## THE STATE v. MUNCHRATH

1. **Criminal Law**: JURORS : CHALLENGES FOR CAUSE MUST BE SPECIFIC. A trial juror, upon his examination, testified that he had formed an opinion as to the guilt or innocence of defendant which he then retained, and that he would go into the jury room with that opinion in his mind. But his examination was lengthly, containing numerous questions and answers, and some of his answers show no cause of challenge. The challenge of the juror was in the following form : "The defendant challenges the juror on his answers for cause." *Held* too general, under Code, section 4405, which provides that a challenge for cause "must distinctly specify the facts constituting the causes of challenge."

2. ———— : ———— : QUALIFICATION : PRIOR OPINIONS : QUESTION FOR COURT. A person may form an opinion as to the guilt or innocence of a defendant from reading newspaper accounts of the alleged crime, or from hearing others speak of it, and not be disqualified thereby from acting as a juror, provided the opinion so formed is not of such a character as to interfere with the rendering of a true verdict on the evidence submitted on the trial. (See *State v. Bruce*, 48 Iowa, 534; *State v. Sopher*, 70 Iowa, 496 ; *State v. Vatter*, 71 Iowa, 558.) And it is the duty of the court, and not of the juror, to determine whether the juror is qualified or not. (Code, sec. 4409.) And in this case—a trial for murder—where several jurors testified that they had formed an opinion as to the guilt or innocence of the defendant from reading what was claimed to be a full report of the evidence given on the trial of another defendant for the same offense, but the other defendant was charged with firing the fatal shot, and this one only with being a conspirator in the commission of the crime, *held* that this court could not say that the trial court erred in retaining the jurors, none of whom had any personal knowledge of the facts, or entertained any ill feeling against defendant, but all of whom, more or less directly, testified that they thought they could try the case and render a verdict according to the evidence submitted on the trial.

The State v. Munchrath.

3. ———— : INDICTMENT : STATEMENT OF SPECIAL FACTS AS TO AIDING AND ABETTING : EVIDENCE. Under section 4314 of the Code, providing that those who aid and abet the commission of a crime, though not present, "must hereafter be indicted, tried and punished as principals," evidence that defendant was engaged in a conspiracy to commit the crime charged was properly admitted, though the indictment merely charged him as a principal, and contained no allegations of a conspiracy. (See *State v. Hessian*, 58 Iowa, 69 ; *State v. Pugsley*, 75 Iowa, 744.)

4. ———— : CONSPIRACY: EVIDENCE. On an indictment for murder, where the theory was that defendant was guilty as a conspirator to commit the crime, evidence of conversations which were explanations of acts of different persons, or tended to show the details of the conspiracy which resulted in the murder, was properly admitted, though the acts and conversations occurred before the formation of the alleged conspiracy, and the conversations were not in the presence of defendant. (Compare *State v. McCahill*, 72 Iowa, 113.)

5. ———— : EVIDENCE : CROSS-EXAMINATION : IMPEACHMENT. Where the state claimed that two witnesses, jointly indicted with defendant, who claimed to have seen the commission of the crime, and who had no communication with each other, gave substantially the same account of the affair at about the same time—one in Chicago, and the other in San Francisco—*held* that it was not error to refuse defendant leave to ask one of them if he did not have a private conversation with the other at a certain place a few days after the crime—because it was not proper cross-examination, and was not necessary to lay the foundation for impeachment.

6. ———— : ———— : WITNESS NOT BEFORE GRAND JURY : REBUTTAL. Defendant, having been shown to have been with certain parties when they started for the commission of the crime, testified that the others went westward to the place of the crime, while he went eastward toward his home. The state was then permitted to show by another witness that he (the witness) was the only one who went east. *Held* that this was properly rebutting testimony, and was rightly admitted against the objection that the witness had not been before the grand jury, and that notice of his testimony had not been given. (See *State v. Maher*, 74 Iowa, 79.)

7. ———— : INSTRUCTIONS AS TO LOWER GRADES OF OFFENSE. On an indictment for murder, where the murder was proved and admitted, and manslaughter was the lowest degree of the offense charged of which defendant could have been convicted under the evidence, the court did not err in refusing to instruct as to offenses of a lower degree. (See *State v. Cole*, 63 Iowa, 700.)

8. ——— : CONSPIRACY : GUILT MEASURED BY RESULTS RATHER THAN BY INTENTIONS. One who conspires with others to do an unlawful act is liable for the acts of his co-conspirators, done in pursuance of the common design. And so, where the conspiracy was to whip a man, but it resulted in shooting him, all were guilty of the shooting. (See *State v. Shelledy*, 8 Iowa, 505; *State v. McCahill*, 72 Iowa, 116.)

*Appeal from Woodbury District Court.*—HON. GEORGE W. WAKEFIELD, Judge.

FILED, OCTOBER 3, 1889.

FRED Munchrath, Jr., John Arensdorf and others were jointly indicted for the murder of George C. Haddock, committed in Sioux City on the third day of August, 1886. Separate trials were demanded. The first trial of Arensdorf was had at the March term, 1887, of the Woodbury district court, and resulted in a disagreement of the jury. The trial of Munchrath was commenced on the seventh day of the next September, and resulted in his conviction of the crime of manslaughter. A motion for a new trial was overruled, and he was adjudged to be imprisoned in the penitentiary at Fort Madison for the term of four years, and to pay the costs of the trial taxed at $896.65. From that judgment Munchrath appeals.

*Argo & McDuffie* and *O. C. Treadway*, for appellant.

*A. J. Baker*, Attorney General, for the State.

ROBINSON, J.—I. Appellant complains of the action of the district court in overruling each of

1. CRIMINAL law: jurors: challenges for cause must be specific.

fourteen challenges of jurors for cause. During the empanelling of the jury he exhausted his twenty peremptory challenges, but the jury, as finally constituted, contained three of the jurors he had challenged for cause. The statute requires that a challenge for cause "must distinctly specify the facts constituting the causes of challenge." Code, sec. 4405. Among the causes for challenging a juror, specified in the section

named, is the following: "(11) Having formed or expressed such an opinion as to the guilt or innocence of the prisoner as would prevent him from rendering a true verdict upon the evidence submitted on the trial." The corresponding cause for challenge contained in the Revision was as follows: "(8) Having formed or expressed an unqualified opinion or belief that the pris- oner is guilty or not guilty of the offense charged." Revision, sec. 4771. It will be noticed that under the existing statute no opinion which a juror entertains dis- qualifies him unless it "would prevent him from ren- dering a true verdict upon the evidence submitted on the trial." Of the challenges for cause several are insuffi- cient, for the reason that the necessary facts are not stated. The challenge of William Gordon was in the following language: "The defendant challenges the juror on his answers for cause." The juror testified that he had no knowledge of the facts in the case excepting what he had read and heard; that he read all the tes- timony during the trial of Arensdorf ; that he had been acquainted with Haddock, and attended his church; that he had formed an opinion as to the guilt or inno- cence of defendant which he then retained, and that he would go into the jury-room with that opinion in his mind. His examination covers nearly a page and a half of the printed abstract, and contains numerous questions and answers. Some of his answers certainly show no cause for challenge. It was the duty of defend- ant to "distinctly specify" which of the several facts disclosed by the answers he relied upon as a cause of challenge. The challenges of Luse, Barr, Goodrich and Allen were in substance and effect the same as the challenge of Gordon, and insufficient to require further consideration. We do not hold that the facts consti- tuting a cause of challenge should be stated in the language of the statute, but we do hold that the challenge should show with reasonable certainty the ground upon which it is based. That, at least, is due to the court and the adverse party, and is necessary for the proper administration of justice.

II.  The challenges for cause not already consid-
ered will be treated as sufficient in form, although it is
doubtful whether some of them meet the
statutory requirement.  All seem to be
founded upon subdivision 11 of section
4405 of the Code.  Several of the jurors to
whom they were directed stated in substance that they
had read what was claimed to be all the evidence given
on the trial of Arensdorf, as it was published in one or
more of the Sioux City papers; that they had talked
about the case, and had formed an opinion in regard to
the guilt or innocence of the defendant in this case.
Several stated that it would require evidence to remove
that opinion.  One stated that his opinion was unqual-
ified and unconditional, and that it would occupy his
mind more or less during the trial; but he also stated
that before he changed his opinion he "would want to
hear some testimony."  Most of the jurors stated that
they thought they could try the case and render a ver-
dict according to the evidence submitted on the trial.
None showed any ill feeling towards defendant; none
manifested any other desire than that justice should be
done; and none had any personal knowledge of the
facts in the case.  As we view the record in this case,
we are required to determine whether a person other-
wise unobjectionable is disqualified from acting as a
juror on the trial of one defendant if he has formed an
opinion as to his guilt or innocence from having read
what is claimed to be a full report of the evidence given
on the trial of another defendant for the same offense.
If he had served as a juror in the last-named case he
would be disqualified by the statute,  Code, sec. 4405,
subd. 8.  The same would have been true had he served
on the grand jury which found the indictment, or on
the coroner's jury which inquired into the death of the
person whose death is the subject of the indictment, or
if he had been on a jury formerly sworn to try the same
indictment and whose verdict was set aside, or which
was discharged without a verdict, after the cause was
submitted to it, or if he had served as a juror in a civil

2. ——: ——:
qualification:
prior opinions:
question for
court.

action brought against the defendant for the act charged as an offense. Code, sec. 4405, subds. 7, 9, 10. In all these cases the juror is conclusively presumed, on proper objection, to be disqualified from acting as a juror by reason of his knowledge of the facts in the case. But the statute does not in terms disqualify one who has read or heard a report of one trial from acting as juror on another for the same offense. A person may form an opinion from reading newspaper accounts of an alleged crime, or from hearing others speak of it, and not be disqualified thereby from acting as a juror, provided the opinion so formed is not of such a character as to interfere with the rendering of a true verdict on the evidence submitted on the trial. *State v. Vatter*, 71 Iowa, 558; *State v. Sopher*, 70 Iowa, 496; *State v. Bruce*, 48 Iowa, 534. It is the duty of the court, and not of the juror, to determine whether or not his opinion disqualifies him to act as a juror. "In all challenges the court shall determine the law and the fact." Code, sec. 4409. Other witnesses than the juror may be examined as to his qualification. Code, sec. 4408. It is the duty of the trial court to decide as to the fact of qualification of the juror from a consideration of his examination as a whole, and from the consideration of such other evidence and circumstances as may be relevant and tend to aid it in reaching a just conclusion. A conscientious juror may be in doubt as to whether the opinion he has formed will affect his verdict, while the court may be entirely satisfied that he would discharge the duties of a juror impartially, and in all respects as required by law. Another juror might believe and state that he could listen to the evidence and render a verdict without regard to his previously formed opinion, while the court might be entirely satisfied from the examination as a whole that his opinion could not be readily overcome, and that he could not discharge the duties of a juror properly. The court might be greatly aided in its determination of the fact by the appearance of the juror, his manner while undergoing examination, and circumstances surrounding the trial; and in cases of

doubt this court will not interfere with the decision of the court below.

In this case much of the evidence given on the trial of Arensdorf must have been given on the trial of appellant, but it was not claimed on either trial that appellant fired the shot which caused the death of Haddock. He claims that he was not present when the shot was fired. His guilt did not depend upon the guilt or innocence of Arensdorf, and we are not justified in presuming that his connection with the murder was made especially prominent, nor that his defense was fully presented, on the trial of Arensdorf. In other words, while the jurors may have formed opinions from reading full newspaper reports of the evidence submitted on the last-named trial, yet it is not shown that it was the evidence upon which the parties relied on the trial of appellant. The offense charged in each case was the same, but it was the theory of the state that Arensdorf fired the fatal shot, and that appellant became a party to the murder chiefly through the medium of a conspiracy. Under these circumstances we are of the opinion that appellant failed to show that any of the jurors in question were disqualified under the statute, and that the case falls within the rule announced in the cases we have cited.

III. The indictment contains no reference to a conspiracy, but charges all the defendants therein named, in the same terms, with the murder of Haddock by shooting him with a loaded pistol. On the trial the state was permitted to introduce evidence which tended to show that the murdered man had incurred the ill will of some of the saloon-keepers of Sioux City by reason of his personal efforts to have enforced the laws of the state in regard to the sale of intoxicating liquors; that suits to enjoin sales of liquors were pending ; that saloon-keepers organized for the purpose of defending against the litigation; that members of the organization endeavored to hire men to assault and maltreat persons who were concerned in the prosecutions, and that deceased was one of those selected for such treatment ;

3. ——: indictment: statement of special facts as to aiding and abetting: evidence.

that appellant was a member of the organization, and a party to the negotiations for the attack upon Haddock; that during the evening of his death Haddock and a companion procured a horse and buggy at a livery stable and drove to the eastern part of the city in search of evidence to aid the pending prosecutions; that his movements were known, and his return awaited, by defendant and others interested in the saloon-keepers' organization; that when his return was announced, appellant, Arensdorf and others went towards the stable to which Haddock had driven, and stopped at a street corner near which he would attempt to pass after leaving the stable; that appellant there stated that "if any one was going to lick Haddock, not to hurt him, just to give him a black eye, so that no one would get into trouble;" that as Haddock started to cross the street to the corner above named Arensdorf started to meet him; that the two men met, and just after they had passed each other Arensdorf turned and shot Haddock in the shoulder and neck in such a manner that he staggered to the side of the street and died from the effects of the shooting in a few minutes, and without speaking. The appellant objected to so much of the evidence as tended to show a conspiracy to injure Haddock, on the ground that no conspiracy was charged in the indictment, and that, if he is chargeable with the murder of deceased by reason of his part in a conspiracy, that fact should have been alleged. "All persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense, or aid and abet its commission, though not present, must hereafter be indicted, tried and punished as principals." Code, sec. 4314. It has been held under this provision that two persons may be jointly indicted for an offense which, from its nature, can be committed by but one, and that under such an indictment one who merely aided and abetted the commission of the offense can be convicted. *State v. Comstock*, 46 Iowa, 265. It has also been held that the indictment need not set out the facts in regard to one who merely aids and abets the commission of the

offense charged. *State v. Hessian*, 58 Iowa, 69. See, also, *State v. Pugsley*, 75 Iowa, 744. In our opinion, the evidence to which objection was made was properly admitted. The crime charged was the murder of Haddock, and evidence which tended to show that defendant aided or abetted that crime was proper under the indictment.

IV. Appellant complains of the admission of certain testimony which tended to show that litigation was pending in regard to saloons; that defendant and others were present while some of the cases were being heard; that steps were taken by Haddock and others to procure additional testimony; and that attempts were being made to organize the saloon-keepers, and hire men to maltreat persons connected with the prosecutions,— on the ground that the acts and conversations objected to were before the formation of the alleged conspiracy, and that the conversations were not in the presence of defendant. We have examined the objections made, but do not find them to be well founded. The conversations referred to were in the main explanatory of acts of different persons, or tended to show the details of the organization or conspiracy which resulted in the murder. We discover no erroneous ruling which could have prejudiced defendant. *State v. McCahill*, 72 Iowa, 113.

V. It is claimed on the part of the state that two witnesses, who claim to have seen the shooting, and who had not communicated with each other, gave substantially the same account of the affair, at about the same time. They were indicted jointly with defendant and others for the crime, and made the statements in question when arrested,— one in Chicago, and the other in San Francisco. The defendant complains of the refusal of the court to permit him to ask one of these witnesses if he did not have a private conversation with the other at a place named in Sioux City, two or three days after the murder. There was no error in the ruling in question. It was

not proper cross-examination, and was not necessary to lay the foundation for impeachment. If such a conversation occurred it was proper for defendant to show it by his own witnesses, and he attempted to do so. Furthermore, both the witnesses in question afterwards testified that they had no such conversation as that claimed, and there was then opportunity to cross-examine them.

VI. The evidence on the part of the state tended to show that defendant, Arensdorf and others, alleged to 6. ——: ——: witness not before grand jury: rebuttal. have been concerned in the murder, met in Junk's saloon, and from there went in a westerly direction to meet Haddock at the place of his death. The evidence on the part of defendant tended to show that he went out of Junk's saloon with the crowd, but that instead of going west he went eastward along the street to his home, and that he was not present at the shooting. One Robson was permitted to testify in rebuttal, in effect, that he was in Junk's saloon at the time in question, and saw the crowd go westward, and that at that time no one but himself went eastward. Appellant complains of the introduction of this evidence, on the ground that Robson was not before the grand jury, and notice of his testimony had not been given, and that his testimony was not rebutting in its nature, but should have been given before the state rested and the evidence for the defense was commenced. It is true that it might have been given at the time stated, but it was clearly in the nature of rebutting evidence, as it tended to show that defendant's claim as to what he did after leaving Junk's could not be true. We think the testimony was properly admitted. *State v. Maher*, 74 Iowa, 79.

VII. Appellant contends that the court erred in not instructing the jury that they might find him guilty 7. ——: instructions as to lower grades of offense. of an offense of a lower grade than manslaughter, and in instructing them that they could not so find. The murder of Haddock was clearly proven, and not denied. Manslaughter was the lowest degree of the offense charged

in the indictment of which defendant could have been convicted under the evidence. Therefore the court did not err in not submitting to the jury the question of the guilt of any person of a lower degree. *State v. Cole*, 63 Iowa, 700.

VIII. Appellant insists that he could not be convicted of manslaughter unless the death of Haddock

8. ——: conspiracy: guilt measured by results rather than by intentions.

was accomplished in pursuance of a conspiracy to which he was a party, and that, if the conspiracy only contemplated the whipping of Haddock, and the shooting was not contemplated and not assented to by him, he would not be responsible for it. But the whipping would have been unlawful, and it is settled that one engaged in an unlawful act is liable for the acts of his co-conspirators, done in pursuance of the common design. In this case the state claims, and the evidence tends to show, that defendant was a party to a conspiracy to whip Haddock, and that the murder was the result of that conspiracy. Defendant is not free from liability for the shooting by reason of the fact that the injury done was greater than that intended by the conspirators. *State v. McCahill,* 72 Iowa, 116; *State v. Shelledy*, 8 Iowa, 505.

IX. Numerous other questions, including the correctness of the charge to the jury and the sufficiency of the evidence to sustain the verdict, are discussed by counsel. We have considered them all with care. The charge as a whole was fair to defendant, and the portions criticised by counsel were correct, or not of a nature to mislead the jury. The evidence as to the guilt of defendant was conflicting, but we cannot say that it does not sustain the verdict. We find no error in the record prejudicial to defendant. The judgment of the district court is      AFFIRMED.