## STATE OF IOWA V. WILLIAM H. HURD, Appellant.

**Incest: INDICTMENT.** Under Code, section 4030, providing that, "if any persons being within the degree of consanguinity or affinity, in which marriage is prohibited by this section, carnally know each other, they shall be deemed guilty of incest," an indictment charging as the offense, that defendant had carnal knowledge of his daughter is sufficient, though it does not charge that the persons, had carnal knowledge of each other; for mutual consent is not under our statute, an element of incest. *United States v. Hiler*, 1 Morris, 330, *distinguished*.

**EVIDENCE:** *Discretion.* On a trial for incest, where several acts of intercourse were shown, extending over a period of over eighteen months, it was not an abuse of discretion to refuse to require the prosecution, before the close of the direct evidence, to elect on which act it would rely.

**Rape and Incest.** It was not error to admit evidence of an act which constituted rape, since that crime included incest.

**Pregnancy.** It was not error to exclude a conversation had with the prosecuting witness regarding her conduct with men other than defendant, at a period which could not have affected her pregnancy, as proven by the state.

*Disclosing purpose of question.* Evidence of a conversation between witnesses and the county attorney on the night before the witnesses were called, was properly excluded, where the purpose of its introduction was not disclosed.

*Harmless error—appeal.* A conviction of incest will not be reversed on appeal, because defendant's former wife, who was incompetent under Code, 3612, was allowed to testify to conversations between them, tending to show the acts of intercourse relied on by the prosecution, where the fact that there were repeated acts of intercourse is established beyond all doubt, and the evidence of intercourse charged is so strong that the exclusion of her testimony could not have affected the result.

*Irrelevancy and incompetency.* Preliminary information filed against a defendant in a prosecution for incest, charging rape and incest against different members of his own family, including the prosecutrix, covering the time of the acts relied upon by the state, are inadmissible in behalf of the defendant for the purpose of showing that there was doubt in the minds of the prosecution as to the exact legal aspect of the various facts.

INDICTMENT: *Minutes of evidence.* Letters and pictures that were before the grand jury, are not required to be returned with the indictment to the clerk, under Code, section 4337, providing that an indictment must be set aside on motion, when the minutes of the evidence of witnesses summoned before the grand jury are not returned therewith, as the word, "witnesses" means "persons."

*Same.* An indictment will not be set aside under Code, section 4337, providing that an indictment must be set aside on motion, when the minutes of the evidence of witnesses summoned before the grand jury, are not returned therewith, because only a copy of the testimony taken by the clerk of the grand jury, made by a stenographer and typewriter, in the office of the county attorney, was returned, there being no pretense that the minutes so returned are not correct.

**Witness:** NOT BEFORE GRAND JURY: *Waiver.* Under a statutory provision that the state shall not introduce any witness whose name is not indorsed on the indictment, defendant waives the objection to the introduction of such a witness by allowing him to be examined, in part, without objection. The prohibition goes to the witness, and not to the competency of his testimony.

LADD, J., took no part.

*Appeal from Woodbury District Court.*—HON. F. R. GAYNOR, Judge.

WEDNESDAY, APRIL 7, 1897.

INDICTMENT for incest. Verdict of guilty, and a judgment thereon, from which the defendant appealed. —*Affirmed.*

*Wright & Hubbard* and *T. F. Bevington* for appellant.

*Milton Remley,* attorney general, *J. W. Hallam,* county attorney, and *Jesse A. Miller* for the state.

GRANGER, J.—I. The defendant moved to quash the indictment, for different reasons. It appears that there were before the grand jury certain pictures and letters that were not returned with the indictment to the clerk, nor filed in his office, but were kept in the

office of the county attorney, and it is thought that the indictment should be quashed for that reason. The letters and pictures are documentary, and, as evidence before the grand jury, it was not necessary to set them out or note them in the minutes of the evidence. *State v. Mullenhoff,* 74 Iowa, 271 (37 N. W. Rep. 329). It follows that such evidence is not what is meant when minutes of evidence are required to be kept. It is provided by section 4337 of the Code, that an indictment must be set aside on motion "when the minutes of the evidence of witnesses examined before the grand jury are not returned therewith." It will be seen that the minutes required to be returned are those of the evidence of witnesses, and not of all the evidence. There is a plain limitation as to the kind of evidence contemplated. These letters and pictures were not used on the trial of the indictment, and may be regarded as immaterial, in which case, even though it was the evidence of a witness, it could be disregarded. *State v. Little,* 42 Iowa, 51. See, also, *State v. Miller,* 95 Iowa, 368 (64 N. W. Rep. 288). The word "witnesses," used in the section, means "persons." *State v. Farrington,* 90 Iowa, 673 (57 N. W. Rep. 606.

II. The minutes of the testimony of the witnesses examined before the grand jury were taken by the clerk of the grand jury, and then taken and copied by a stenographer and typewriter in the office of the county attorney, and it is the copy made by her that was returned with the indictment into court. This fact is also made a ground of the motion to quash the indictment. It is not pretended but that the minutes returned are correct. They were before the grand jury, recognized by it as the minutes of the evidence taken before it, and by it returned into court with the indictment. We know of nothing in the letter or spirit of the law to make it,

necessary for the grand jury to return the minutes of the evidence in the handwriting of its clerk. The important thing is that they shall be the same as those written by him. The irregularity, if it be one, is without the slightest prejudice.

III. The indictment charges, as the act constituting the offense, that the defendant had carnal knowledge of his daughter, but it does not charge that the parties to the act had carnal knowledge of each other. It is strenuously contended that, because of a failure to so charge, the indictment is fatally defective. A demurrer to the indictment, which the court overruled, presents this question. In *State v. Chambers*, 87 Iowa, 1 (53 N. W. Rep. 1090), the question whether mutual carnal knowledge, or consent, was necessary to constitute the crime of incest, was considered on an assignment of error to a refusal to give an instruction embodying a rule to that effect. We there held that such knowledge was not necessary, but that such knowledge by the defendant was sufficient. In support of that holding, we cited *State v. Sanders*, 30 Iowa, 582; *State v. Donovan*, 61 Iowa, 279 (16 N. W. Rep. 130), and *Commonwealth v. Bakeman*, 131 Mass. 577. The correctness of the holding in *State v. Chambers* is doubted, and it is said, that the cases cited for its support, are all adultery cases, which is true. It is also said, that we failed to notice two cases in this state, which are against our conclusion. In *U. S. v. Hiler*, 1 Morris (Iowa), 330, the court construed a statute providing that, "any brother and sister, who, being of the age of sixteen years or upwards, shall have sexual intercourse together, having knowledge of their consanguinity," are guilty of incest. The question decided was, whether, if the brother was over the age of sixteen years, and the sister under that age, he could be convicted. It was held, that he could not. While in

some respects there is a logical relation between the
question presented in that case and in this, an
examination of the opinion in that case will show
a distinguishable difference.  The case is made to turn
on a literal adherence to the wording of the statute,
that "any brother and sister, who, being of the age of
sixteen years," etc.; and the opinion suggests the reasons
why such intercourse with a girl under sixteen years
should not constitute incest.  No such reasons appear
for the rule contended for in this case.  In *State v.
Thomas*, 53 Iowa, 214 (4 N. W. Rep. 908), the
question arose on objections to an indictment
where, in separate counts, the crimes of rape
and incest were charged.  The indictment was
held bad for duplicity, as charging two offenses.  The
state urged, in support of the indictment, that incest
was necessarily included in rape when the parties
were related within the prohibited degrees, because of
which a party might be charged with both crimes in
the same indictment, and convicted of incest, if not of
rape.  Argumentatively, language is used in the
opinion that directly sustains appellant's position.
The holding in that case was by a divided court,—
three to two.  The question in neither the *Hiler* nor
the *Thomas Case* is identical with that determined in
the *Chambers Case*, and involved in this.  We are still
content with our conclusion in the *Chambers Case*,
and while it is not in harmony with some of the
reasoning in the *Thomas Case*, it is not to be under-
stood that we express any opinion as to the con-
clusion in that case.  Our statute, after specifying the
prohibitive degrees as to marriage, provides (section
4030):  "Or if any person, being within the degrees of
consanguinity or affinity in which marriages are pro-
hibited by this section, carnally know each other,
they shall be deemed guilty of incest."  Importance
is attached to the words of the section, "they shall be

deemed guilty of incest," being plural in form. In some cases, from other states, where the rule of appellant's contention is sustained, the same or similar words are thought to be quite indicative. It will be seen that harmony, as to number, is not preserved as to the pronoun "they" and its antecedent "person"; and if either is to yield, in the interest of a proper construction of the section, it may certainly as well be the pronoun as its antecedent term, and we think, grammatically speaking, better. We do not criticise the language of the section, but think the word "they" should be understood as equivalent to "both" or "each," which was evidently the intent. We do not refer to this as a controlling thought, but because of so much reliance on the particular form of expression. We attach greater importance to this thought; that in no reasonable sense could the guilt of one party be intended to depend on the guilty knowledge or purpose of the other. The distinguishing fact of this crime, from that of rape, seduction, and adultery, is the abhorrent one of the relationship of the parties, making the intercourse unnatural, sickening, and deplorable in its consequences, because of which such marriages are prohibited and made a crime. It is the particular carnal knowledge that constitutes the offense of each. We have seen no two statutes precisely alike in defining this crime, although there is quite a similarity. In Alabama, with a statute so similar that we can perceive no reason for a different holding, the following headnote has full support in the opinion: "A person may be convicted of incest though he accomplishes his purpose by such force as to render him also guilty of rape." *Smith v. State* (Ala.) 19 So. Rep. 306. See Bishop, St. Crimes, section 660; *Mercer v. State*, 17 Tex. App. 452; *Com. v. Goodhue*, 2 Metc. (Mass.) 193. It has repeatedly been said that the authorities on this question are conflicting, which

we find to be true. We have attempted to show no more than that our holding is not without support in other states.

IV. Two jurors were challenged for cause, after examination, and the challenge denied, and complaint is made. It is not important that we set out the examinations, for they are somewhat lengthy, and less than all would not accurately present the situation. They are cases in which, when part of the answers are considered, the showing is strongly in favor of the challenge; but when all is considered, the holding is clearly within the rule of such cases as *State v. Munchrath*, 78 Iowa, 268 (43 N. W. Rep. 211); *State v. Weems*, 96 Iowa, 426 (65 N. W. Rep. 388); *State v. Yetzer*, 97 Iowa, 423 (66 N. W. Rep. 737).

V. Ida Hurd was not a witness before the grand jury, and her name is not on the indictment. She was sworn in behalf of the state, and after she had answered some fifteen questions, without objection, one was interposed because her name was not on the indictment. An additional transcript by the state shows a notice to have been served, but owing to a question as to such transcript, we may, for the purposes of this question, disregard it, and dispose of the question on other grounds. That a defendant may waive the right to object to the examination of such a witness is held in *State v. Ward*, 73 Iowa, 532 (35 N. W. Rep. 617), and *State v. Houston*, 50 Iowa, 512. The statutory provision relied on is that the county attorney shall not introduce any witness, etc. The prohibition is against the introduction of the witness, and while the statute should not be so construed, in behalf of the state, as to defeat its purpose, on the other hand, the plain meaning should not be subverted to purposes not intended. The legislative intent was to enable a defendant to prevent such a person being used as a witness. To sustain appellant's claim in this

case, would be to practically hold that the objection need not be to the introduction of the witness, but to such part of an examination as might not be desired; that is, the objection could come at such time as the defendant might elect.    We think it the spirit of the rulings in the above-cited cases, that defendant should not so defer his objections as to indicate a willingness for the witness to testify to some facts, and then stop a further examination by an objection.    The prohibition goes to the witness, and not to the competency of his testimony.    If a defendant permits an examination of the witness, in part, without objection, we think it amounts to a waiver, and the statutory prohibition is removed.

VI.    Aurilla Hurd was the wife of the defendant. She was a witness before the grand jury in behalf of the state, and also a witness for the state on the trial of the indictment.    After her appearance before the grand jury, and before her appearance on the trial of the indictment, she had been divorced, and was not then the wife of the defendant.    The argument deals with the fact of her being a witness before the grand jury, and to her testimony there; but we think, under the record, no question as to that fact is for our consideration.    In *State v. Chambers, supra,* it is settled that a wife may be a witness against her husband in a criminal prosecution for incest, on the ground that it is a crime against the wife, within the meaning of Code, section 3641.    The charge in this case is that the defendant had carnal knowledge of his own daughter, who was a girl about sixteen years of age.    It appears that the defendant and his wife, at the time of the offense, as charged, a step-daughter, the daughter Isadore, and three smaller girls, occupied one room; that defendant left his own bed, and went to that of his daughter, where the crime was committed. After his return to his own bed, his wife accused him

of being in bed with Dora, which he denied, and said he had not been out of his own bed. The testimony clearly shows a quarrel between the defendant and his wife, in which both took part. This appears from the testimony of Mrs. Hurd. Such testimony was taken under objections that it was incompetent, under Code, section 3642, to the effect that neither husband nor wife can be examined in any case as to any communication made by one to the other while married, nor shall they, after the marriage relation ceases, reveal in testimony any such communication made while the marriage subsisted. It is questioned to us, whether this accusation and quarrel, in the presence of others, was a communication, within the meaning of the statute. We do not feel called upon to determine that question. If the ruling be conceded as error, by which the testimony was admitted, we think it clearly without prejudice. Of the fact of intercourse between defendant and his daughter, there cannot be said to be a shadow of doubt. Beyond all reasonable doubt, it occurred repeatedly, resulting in the pregnancy of the girl. Because of the showing of intercourse at different times, the state was required to elect, as to the occurrence, on which it would rely for the conviction, and it elected to fix the act as of June 15, 1895, which is the occasion of which we have spoken. The fact of intercourse at that particular date is not so conclusively shown as is the fact of its occurrence at some other time. However, the testimony of the daughter, Isadore, of his having intercourse with her that night, and that of the wife, of seeing him in bed with Isadore, in view of the undisputed or well-established facts, leave little room to doubt that particular fact. Much of what was said between defendant and his wife, of which she gave evidence, did not bear on the particular fact in dispute, and, taken in the light of the

record, we do not think it could have had material weight with the jury in reaching its conclusion. The substance of what was said by the wife was heard by the step-daughter, who was in the room, in another bed, and heard the conversation, and gave evidence of it. We must determine the question of prejudice from the whole record, and we must conclude that a want of prejudice appears, or it will be presumed, with the record as presented. That the result should, and would have been the same without the objectiona- ble evidence, we think, is true. If so, as a matter of course, there was no prejudice.

VII. There is evidence tending to show the act of intercourse between the defendant and his daughter at five different times, covering a period from some time in 1893 to June 18, 1895. As the trial progressed, and the different acts were shown, the defendant moved the court to require the prosecution to elect on which specific act it would rely for the conviction, which motions were denied until the close of the direct evidence on the part of the state, when the court required such election, and it was made of Saturday night, June 15, 1895. Error is assigned upon the former rulings, denying the order. The rule is well settled, and not questioned, that the state is not limited in its proof to the particular time of the act charged in the indictment, where time is not an element of the crime, but it may cover the period of statutory limitation; but, of course, the con- viction can only be of some specific offense. It is also the rule as to adultery, and crimes of that character, that similar acts between the parties, not contem- plated by the charge, may be shown, to disclose the relation and disposition of the parties as bearing on the probabilities of the act as charged. In *State v. Briggs,* 68 Iowa, 416 (27 N. W. Rep. 358), such evidence was permitted where the acts were so distant as not

to be within the period of the statutory limitation, and also out of the county where the crime was charged. It is true that in cases of seduction there are other reasons for the rule than in cases of incest, but there is something of a parallel in such cases. *People v. Patterson* (Cal.), 36 Pac. Rep. 436, is a case of incest, where the rule is definitely stated that such cases, and cases of adultery, are exceptions to the general rule prohibiting the proof of other offenses, and the rule is stated as follows: "Where incest is charged, prior acts of sexual intercourse between the same parties, may be proved." See, also, *People v. Jenness*, 5 Mich. 305; *State v. Markins*, 95 Ind. 464; *State v. Bridgman*, 49 Vt. 202; *State v. Pippin*, 88 N. C. 646. While these different acts were proper as evidence in aid of the particular charge in the instrument, it was, of course, important that the specific act relied on should be known, that a conviction might not be a matter of choice between offenses, and to permit the defendant to properly meet the charge. In Ohio, where the evidence discloses several transactions, either of which would constitute the offense, it is said the defendant has a clear right, before entering his defense, to know for what particular transaction he is being tried. *Stockwell v. State*, 27 Ohio St. 563. See, also, *Simms v. State*, 10 Tex. App. 131; *Long v. State*, 56 Ind. 182. Many cases might be cited with varying conclusions. Mr. Bishop, in his work on Criminal Procedure (volume 1), closes a chapter on Elections as follows: "The doctrine by this chapter is less distinct in the books than we could wish, partly because it is difficult to reduce discretion to rule, and partly because judicial opinions on such a subject cannot, in the nature of things, be in complete harmony. It is believed that in most cases justice is best promoted where the judge permits the witness to go far enough to identify the transaction before

compelling the election.   The chief thing, down to the time when the defense is called for, is to prevent prejudice to the defendant, in the eyes of the jury, by bringing against him testimony tending to show the crimes for which he is not to answer. But, whatever is done in the early stages of the trial, plainly, as a general rule, the election should be required before the prisoner opens to the jury his defense." In the application of the rule, there is a difference between cases in which the evidence as to the other offenses is properly admissible, as in this case, as bearing upon the particular offense, and where it is not.   Had there been no occasion for election in this case, the evidence, as to the other transactions, would have been admitted under the rule we have announced.   Of the many cases cited and examined, we believe there are none that do not sanction the rule of discretion in the court; but under different facts, different conclusions are expressed as to its proper exercise.   We think the discretion of the court in this case was properly used.

VIII.   It appears from the testimony of a son of the defendant, younger than Dora, as well as by her testimony, that the three were in Sioux City, in the fall of 1893, and that the three occupied one bed, by compulsion of the defendant as to Dora, for a part of the night, and that defendant, while the three were in bed together, had intercourse with Dora.   It is said that, if this evidence proves anything, it proves rape, and that evidence of such a crime could not be used to render probable the act charged, as might be evidence of an offense like the one charged.   But we hold that, even though it were rape, if the relationship existed essential to the crime of incest, it would be incest,—that is, incest would be

included in the crime of rape; so that in no event was the rule violated.

IX. Will Worth, a cousin of Isadore Hurd, was a witness for the defendant, and it was proposed to prove by him conversations he had with Isadore regarding her conduct with other men, and also to prove by him that he had seen her in an act of intercourse with one Wellman, in January, 1895. The court refused the offer, and error is assigned on the rulings. It was not error. The fact of pregnancy was shown, and it appears that the court thought the offer of proof of the act in January, 1895, was too remote in point of time to make the evidence material. However that may be, the fact of pregnancy was but an incidental fact in the case, and the pregnancy of which proof had been admitted could not, in the nature of things, have been the result of intercourse in January before, for in June it was in its incipient stage, under all the evidence in the case bearing on the question. The character of Isadore was not involved. Admitting all that was sought to be proven, with the fact of intercourse established, the offense was complete. The same witness was questioned as to conversations with Isadore in May and June, on the subject of her pregnancy, and the testimony was admitted, the thought of the court being, we presume, that the case could only be affected by an inquiry into the particular pregnancy disclosed by the state, the cause of which might properly be considered in finding the fact of intercourse constituting the offense. That seems to us to be the correct rule. We do not understand that the court denied proofs that would throw light on the truth or falsity of facts testified to, that had a bearing on the issues being tried.

X. Mrs. E. G. Worth and her son, Adelbert, were called as witnessess, and each was inquired of as to

conversations had at the house of Mrs. Worth, on the night before they were called as witnesses, between one Albert Worth and the deputy county attorney, and the testimony was refused by the court. It is said in argument that the purpose was to show an effort on the part of the prosecution to prevent Will Worth from giving evidence as to the cause of the pregnancy of Isadore Hurd. Nothing in the record would indicate to the court such a purpose in the examination, so that we need not consider the admissibility of the evidence, had the purpose been known. On the face of the record, the ruling was clearly right. There is a complaint as to the admission of evidence in rebuttal that should have been introduced on the direct. In this, the discretion of the court was not exceeded.

XI. Preliminary informations were filed against defendant, on which he was arrested, as follows: One, June 21, 1895, for rape on Veva Talbot, on the night of June 15, 1895; one, June 22, 1895, for rape on Isadore Hurd, June 15, 1895; one, June 27, 1895, for incest with Veva Talbot, June 1, 1895; and the information in the present case was filed July 16, 1895. The several informations were offered in evidence by the defendant, and refused, and error is assigned on the refusal. It is said in argument that there is a mystery surrounding the whole transaction, because of which the informations should have been admitted, as showing the conduct of the members of the family immediately after the fifteenth of June, 1895, and what was then in their minds, and of those interested in the prosecution. To us, there is no particular force in the claim or reasons urged. The evidence shows a criminal familiarity between the defendant and his step-daughter, Veva Talbot. It shows that he was in her bed on the night of June 15, 1895, and at other times. There is evidence to show force, at times at least, to effect his

purpose. That there may have been doubts as to the legal situation, and whether the charge should be incest or rape, or both, in different proceedings, is not a matter of surprise. We do not see what legitimate bearing the informations could have in aid of the defendant. Their moral effect in evidence would seem rather against than for him; but, in any event, we think the offered evidence immaterial. The judgment will stand AFFIRMED.

LADD, J., took no part.