STATE OF IOWA v. FRED KRUG, ALBERT KRUG, MARTIN KRUG, WILLIAM KRUG, JOHN BANNISH and FRANK FIBAKER, Appellants.

Criminal law: EXAMINATION OF WITNESS: MISCONDUCT: PREJUDICE.
1  A witness who was not before the grand jury may in good faith be called by the State for the purpose of making a record, but that object is attained when an objection to his competency is sustained, and a further inquiry into the facts in disregard

of the ruling and under the pretense of making a record is improper; but in the instant case the inquiries were of such a character that no prejudice resulted.

**Assault:** EVIDENCE OF GOOD CHARACTER: INSTRUCTION. On an issue 2 as to who was the agressor in a prosecution for assault with intent to do great bodily harm, an instruction that evidence of defendant's good character should be considered in determining whether the witnesses for the State were mistaken or had testified untruthfully, is not approved, although as applied to the facts in the instant case was not erroneous.

**Instructions:** DEFINITION OF TERMS. An instruction that if defend- 3 ants conspired to engage the prosecutor in a fight they could not be acquitted on the ground of self-defense was not objectionable as failing to define " conspiracy "; since the jury would be presumed to understand the word to mean merely a mutual understanding to engage in the affray, when considered in connection with the other instructions given.

**Assault:** INDECENT LANGUAGE: INSTRUCTION. Refusal to instruct 4 that abusive and indecent language never justifies an assault is not prejudicial error, where the evidence for the State shows that such language was not employed until after the prosecutor was assaulted, and the evidence for defendant shows it was not used at any time.

*Appeal from Boone District Court.*— HON. C. G. LEE, Judge.

MONDAY, NOVEMBER 18, 1907.

THE defendants were accused in the indictment of having committed an assault with intent to inflict a great bodily injury upon one Newton Phipps, and were convicted of having committed an assault. They appeal.— *Affirmed.*

*Frank Hollingsworth* and *D. G. Baker,* for appellants.

*H. W. Byers,* Attorney-General, and *Chas. W. Lyon,* Assistant Attorney-General, for the State.

LADD, J.— The first indictment against defendants was set aside on motion of the State. On resubmission, another, on which they were convicted, was returned. One Lockard,

who had not been called as a witness in the last investigation, but had testified before the grand jury when the first indictment was found, was called as a witness, and, on objection of the defendants, not permitted to testify.   Notwithstanding this ruling, the county attorney proceeded to interrogate the witness as to whether he was the man who arrested defendants, where Martin Krug was at the time he went to make the arrest, what he was doing, and what was said between said Krug and the witness.   Objections to each of these ·inquiries were sustained, but appellants insist that, as section 5373 of the Code provides that the county attorney " shall not be permitted to introduce " such a witness, calling Lockard to the stand and especially asking him the questions after the court's ruling was reversible error.   Surely a witness may be called in order to obtain a ruling of the court.   " The legislative intent," as said in *State v. Hurd,* 101 Iowa, 391, " was to enable a defendant to prevent such a person being used as a witness," and this is accomplished by interposing a timely objection.   If the witness is called in good faith, error cannot be predicated on this alone, for, as ‎held in the case last cited, the statute is directory, and its benefits may be waived.   Whether the conditions precedent to calling the witness have been observed is always a question for the court ·(*State v. Dale,* 109 Iowa, 97), and, after its ruling, there is no excuse for proceeding in disregard thereof on the specious pretense of making a record.   The nature of the ruling is such as to preclude any showing of the admissibility of the evidence, which, but for it, might have been elicited, and this is never essential in order to challenge the correctness of the ruling.   The inquiries should not have been permitted by the court, but they were of such a character that no prejudice could have resulted from making them.

<span style="margin">1. CRIMINAL LAW: examination of witness: misconduct: prejudice.</span>

II.   Evidence was introduced tending to show that, prior to the offense alleged, the defendants had borne a good

character for morality, and had been peaceably disposed, and
with reference thereto the court instructed the
jury that " such facts (if facts they are) are
competent evidence in favor of a party ac-
cused as tending to show that he would not be
liable to commit the crime charged against him, and in this
case, if you believe from the evidence that, prior to the com-
mission of the alleged crime, any of the defendants had
borne a good character for morality among his acquaintances
and in the neighborhood where he lived, and had been of a
peaceable disposition, then the same is a fact proper to be
considered by you with all the other evidence in the case in
determining the question whether the witnesses, who have
testified to facts tending to criminate such defendant, have
been mistaken, or have testified falsely or untruthfully, and
if, after a careful consideration of all the evidence in the
case, including that bearing upon the defendants' previous
good character and disposition, you entertain a reasonable
doubt of the defendants' guilt, then it is your duty to ac-
quit." The remainder of the instruction was to the effect
that, if found guilty, good character furnished no excuse.
This court declined to approve a like instruction in *State
v. Wolf,* 112 Iowa, 458, on the ground that the leading
thought expressed was that such evidence of good character
could be considered only as affecting the testimony of wit-
nesses. In that case, the State relied on circumstantial evi-
dence and proof of admissions to corroborate the prosecutrix,
and manifestly, to so limit the effect of the proof of good
character was error. Here all the evidence was direct; the
defendants relying on a plea of self-defense. The conflict
in the testimony, in so far as important, related to the issue
as to which was the attacking party. This being so, the only
bearing the evidence of good character could have had was in
tending to show that defendants were not the aggressors.
According to the story of the State's witnesses, they were
such, and therefore the tendency of this proof must have

2. ASSAULT:
   evidence of
   good char-
   acter: in-
   struction.

been to show that they were mistaken, and thereby discredit the witnesses of the State to the contrary; in other words, in the language of the instruction, to show that they had " been mistaken or testified falsely or untruthfully." As applied to the facts of this case, the instruction was not erroneous, though it cannot be commended. It seems to have been taken from Sackett on Instructions to Juries (2d Ed.) 662, the fruitful source of many mistakes in charges to juries.

III.   After advising the jury that the attacking party may not plead self-defense, save at least as against the use of excessive force, and the right of the party assailed to resist, the court proceeded to say that, if defendants " entered into a conspiracy, or agreed or confederated together, with the design or purpose of engaging the said Newton Phipps and others in a fight, or (2) that they voluntarily sought or invited the difficulty, or (3) that they provoked or commenced or brought it on by any willful act of their own, or (4) that they voluntarily and of their own free will engaged in it, then and in that case you are not authorized to acquit such defendants as were so concerned upon the ground of self-defense, and, in determining who provoked or commenced the difficulty or made the first assault, you should take into consideration all the facts and circumstances in evidence before you."   The objection is to the use of the word " conspiracy " in the first clause of the instruction, and it may be conceded that it might as well have been omitted, as it was not defined save in the words following.   But jurors are presumed to understand the English language and the meaning of the words in common use.   With the explanatory words, following it, this jury could not have been misled into thinking that, as employed, the word was other than a mutual understanding of defendants with the object of engaging in the fight.   If they so did, they were not in a situation to plead self-defense.

3. INSTRUCTIONS: definition of terms.

IV.   Instructions requested and refused, except No. 7,

in so far as correctly stating the law, were included in those given.

The seventh request was, in substance, that abusive or indecent language never justifies an assault, and if employed by defendants, or any of them, would not excuse Phipps or any of his companions in assaulting defendants. The witnesses for the State testified that, though such language was used, Phipps was struck first, while, according to the witnesses for the defense, no such language was employed. In these circumstances, though the instruction might well have been given, the refusal to give it was not prejudicial.— *Affirmed.*

*4. ASSAULT: indecent language: instruction.*