OF

## CASES AT LAW AND IN EQUITY

DETERMINED BY THE

# SUPREME COURT

OF THE

## STATE OF IOWA

AT

## DES MOINES, SEPTEMBER, 1917, AND

## JANUARY, 1918, TERMS

---

STATE OF IOWA, Appellee, v. CHARLES W. PELSER, Appellant.

INDICTMENT AND INFORMATION: Amendment—Matters of
1  Form—Erroneous Designation of Judicial District. An indictment may be so amended by the county attorney as to correct an error in a mere matter of *form*. So held as to an indictment actually returned by the grand jury of the Avoca, Pottawattamie County, district, for an offense committed within that district, amended by striking from the caption the words "Council Bluffs" and inserting the word "Avoca." (Sec. 5289, Code Supp., 1913.)

INDICTMENT AND INFORMATION: Requisites and Sufficiency—
2  Caption. Principle recognized that the caption to an indictment is not a material part thereof.

INCEST: Evidence—Prior Incestuous Acts—Miscarriage. Evidence
3, 13 as to incestuous acts between prosecutrix and the defendant, prior to the act on which conviction is sought, *and evidence as to a miscarriage following one such act*, is admissible, the for-

Vol. 182 IA.—1

mer tending to show the sexual relation existing between the parties, the latter as tending to corroborate the prosecutrix as to the occurrence of such prior acts.

**CRIMINAL LAW:** Trial—Reception of Evidence—Timely Motion
4 To Strike—Incest. Whether testimony which is properly in the record during one stage of the proceeding is erroneously retained in the record after the happening of proceedings which, it is claimed, render its further retention improper, is properly raised, at the time the latter proceedings are had, by a motion to strike. So held in an incest case where, after election by the State, it was sought to exclude from the record evidence of prior incestuous acts.

**INCEST:** Corroboration of Prosecutrix—Condition of Sexual Organs.
5 gans. Testimony as to the physical condition of the private parts of the prosecuting witness in an incest case *subsequent to the happening of the specific act upon which conviction is sought*, and in the absence of any other showing of cause for such condition, may be corroborative of a recital by prosecutrix of numerous prior incestuous acts occurring between her and defendant.

**INCEST:** Accomplice—Corroboration—Age of Consent. A prosecu-
6 trix under the age of consent may not be an accomplice in the crime of incest. It follows that no corroboration is absolutely required. (See Sec. 5489, Code, 1897.)

**WITNESSES:** Impeachment, Etc.—Hypothetical Basis Without
7 Foundation in Record—Incest. Witnesses may not be impeached upon a hypothetical basis which has no foundation in the record. So held where defendant in a prosecution for incest sought to show by expert testimony that premature sexual development is likely to detrimentally affect the mental processes of a female, there being no attempt whatever to show that the prosecutrix in question was mentally deficient.

**APPEAL AND ERROR:** Review—Presumptions—Exclusion of
8 Question—Necessity to Show Prejudice. Error may not be predicated on the exclusion of questions which in no manner suggest the answer expected. So held as to certain excluded questions put to a medical expert.

**TRIAL:** Misconduct of Court—Prompt Withdrawal. Withdrawal of
9 possibly prejudicial remarks by the court cures the error, if any, in making them.

CRIMINAL LAW: Instructions—Form, Requisites and Sufficiency—Assumption of Fact—Incest. Instructions reviewed, and held non-assumptive of the fact of prior incestuous relations of the parties.

CRIMINAL LAW: Instructions—Withdrawal Favorable to Defendant. An accused may not complain of instructions which wholly withdraw from consideration all evidence by the State of incestuous relations between prosecutrix and defendant subsequent to the transaction on which the State elects to rely.

CRIMINAL LAW: Instructions—Form, Requisites and Sufficiency—Good Character. Instructions relative to the effect of good character in a criminal prosecution reviewed, and held correct.

INCEST: Evidence—Prior Incestuous Acts—Miscarriage.

TRIAL: Instructions—Form, Requisites and Sufficiency—Correct But Not Explicit—Criminal Law. Instructions which are correct, though not as explicit as desired, are sufficient, in the absence of a request for the more explicit one. So held as to an instruction relating to prior incestuous acts.

TRIAL: Misconduct of Counsel—Withdrawal—Effect. Promptly sustaining objections to improper argument, followed by equally prompt withdrawal of the remarks by counsel and further direction by the court to the jury to wholly disregard the same, has large curative qualities on the error.

*Appeal from Pottawattamie District Court at Avoca.—*
C. D. WHEELER, Judge.

JUNE 23, 1917.

REHEARING DENIED DECEMBER 14, 1917.

DEFENDANT was indicted on the charge of incest. Trial to a jury. Verdict of guilty. Judgment on the verdict. Defendant appeals.—*Affirmed.*

*Preston & Dillinger* and *E. R. Acres,* for appellant.

*H. M. Havner,* Attorney General, *H. H. Carter,* Assistant Attorney General, *C. E. Swanson,* and *E. R. Jackson,* for appellee.

GAYNOR, C. J.—The defendant was indict-

1. INDICTMENT
   AND INFOR-
   MATION:
   amendment:
   matters of
   form: er-
   roneous desig-
   nation of ju-
   dicial district.

ed on the charge of incest committed on his daughter, Iva Pelser, between the 1st day of September, 1912, and the 1st day of January, 1915, in the county of Pottawattamie, state of Iowa, and east of the west line of Range 40.

It appears that the district court in and for Pottawattamie County convened at Avoca, which is east of Range 40 in said county, on the 6th day of April, 1915, and on said day, at Avoca, the court impaneled a grand jury for the April term. On the 7th day of April, 1915, this grand jury returned the foregoing indictment. The caption to the indictment read, "District Court of Pottawattamie County, Iowa, at Council Bluffs." On the 8th day of April, 1915, the defendant, Charles W. Pelser, appeared in person and by attorney, waived the reading of the indictment and took time to plead, and, on the 12th day of April, appeared again in person and with his attorney, and entered a plea of not guilty. On April 16, 1915, the defendant appeared before the said district court, sitting at Avoca, and filed a motion for continuance, and by consent the same was sustained. The original indictment bears the following endorsement:

"Presented in open court by the foreman of the grand jury in the presence of his fellows, and filed with the minutes of testimony attached, this 7th day of April, 1915."

On the 28th day of September, 1915, the county attorney filed an amendment to the indictment, alleging that the incest charged in the indictment was committed on or about the 1st of January, 1915. On October 4, 1915, a jury was impaneled and sworn to try the cause, and thereafter evidence was taken. On the 7th day of October, 1915, the county attorney filed a second amendment to the indictment, striking out the words "Council Bluffs" in the

caption of the indictment, and inserting in lieu thereof the word "Avoca." To this amendment the defendant objected on several grounds, all of which need not be here set out. The grounds of objection, stated in a general way, are to the effect that it appeared upon the face of the indictment that the grand jury returning the indictment was impaneled by the district court of Pottawattamie County at *Council Bluffs;* that said grand jury had no jurisdiction to return an indictment, for the reason that, on the face of the indictment, the crime was committed east of the west line of Range 40 in Pottawattamie County; that the grand jury west of Range 40, at Council Bluffs, had no jurisdiction of the crime; and that the court at Avoca had no jurisdiction to hear the cause and try the defendant upon an indictment returned by the grand jury impaneled in the district court of Pottawattamie County at Council Bluffs. This is, in substance, the basis of the defendant's complaint of this amendment. Permitting this amendment is the first error relied upon by the defendant for a reversal.

To better understand this controversy, it is necessary that we go back a bit and see on what such an objection rests. Pottawattamie County is divided east and west, for judicial purposes. The twentieth general assembly, by a special act, provided for holding sessions of the old circuit court of Pottawattamie County at Avoca, in addition to sessions held at Council Bluffs, the county seat, and divided the county, for judicial purposes, by an imaginary line running between Ranges 40 and 41, and gave to the Avoca court exclusive jurisdiction of all matters arising east of the line and to the Council Bluffs court exclusive jurisdiction of all matters arising west of that line. The twenty-first general assembly abolished the circuit court, placing all powers and duties of the circuit court upon the district court, and, by Section 5 of Chapter 134, provided

for holding sessions of the district court at Avoca. The twenty-second general assembly enlarged the jurisdiction of the Avoca court, giving it jurisdiction over criminal matters, and providing for a grand jury in that court. The effect of these enactments is to give to the district court at Avoca exclusive jurisdiction over all offenses committed in Pottawattamie County east of the west line of Range 40. Therefore, the grand jury must be drawn from that territory and must be impaneled by the court sitting at Avoca, and the indictment must be returned to and filed in that court. The district court at Council Bluffs has like jurisdiction and powers west of the line, and each court acts independently of the other.

The district court sitting at Avoca has no jurisdiction to hear and determine the guilt or innocence of parties indicted by a grand jury sitting at Council Bluffs. The jurisdiction to hear and determine rests in the district court sitting as such at Council Bluffs. A grand jury impaneled by the district court sitting at Council Bluffs has no jurisdiction to indict for offenses committed outside the territorial limits of the jurisdiction of the district court sitting at Council Bluffs. So it follows that, if defendant's contention that the indictment was found and returned by a grand jury impaneled by the district court sitting as such at Council Bluffs is true, the district court sitting at Avoca had no jurisdiction to try the defendant on that indictment. If it be true, as contended by defendant, that the indictment charged the commission of an offense within the territorial limits of the district court sitting at Avoca, then a grand jury impaneled at Council Bluffs had no right to return the indictment, for want of jurisdiction.

What are the facts disclosed by the record in this cause? The offense, if any was committed, was committed within the territorial limits of the district court sitting at Avoca. The defendant was indicted by a grand jury duly

called and impaneled by the district court sitting at Avoca. The grand jury was drawn from the territory east of Range 40 in Pottawattamie County. The indictment was returned to and filed in the district court sitting at Avoca. The facts, therefore, do not support defendant's contention that the indictment was found at Council Bluffs by a grand jury impaneled by the district court at Council Bluffs, for a crime committed within the territorial limits of the district court sitting at Avoca.

Did the county attorney have a right to amend the indictment under these facts, all of which appeared in the record at the time the amendment was offered?

The State contends that the objection was filed too late. We pass this, however, preferring to decide the matter upon the issue involving the right to file it at all. Subdivision 7 of Section 5289, Code Supplement, 1913, provides that the county attorney may, at any time before or during the trial of the defendant upon indictment, amend the indictment so as to correct errors or omissions therein as to matters of form. As said before, the indictment was returned by a grand jury impaneled by the district court sitting at Avoca. The crime, if any committed, was within the jurisdiction of the Avoca court. The record shows that the grand jury that returned the indictment was impaneled by the district court of Avoca. The indictment shows that the offense was committed within their jurisdiction. The record shows every essential to give the grand jury sitting at Avoca jurisdiction over the offense and to return an indictment therein. The record discloses every fact essential to give the Avoca district court jurisdiction to try and determine the guilt of the defendant upon the indictment. The caption of the indictment, however,

2. INDICTMENT AND INFORMATION: requisites and sufficiency: caption.

read: "State of Iowa v. Charles W. Pelser, District Court of Pottawattamie County, Iowa, at Council Bluffs, April Term, 1915." Then follows: "The grand jury of the county

of Pottawattamie, in the name and by the authority of the state of Iowa, accuse Charles W. Pelser of the crime of incest, committed as follows." The indictment then proceeds to charge the defendant with the commission of the offense in Pottawattamie County, east of the west line of Range 40. It is apparent, then, that the caption was an error, a misstatement of fact, due, as we are informed, to the fact that, in preparing the indictment for the grand jury, the county attorney inadvertently used a form that was printed for and used in the Council Bluffs district. If the caption is a material part of the indictment, and the amendment affected a substantial right of the defendant's, then there might be some basis for questioning the right of the county attorney to make the amendment under the statute hereinbefore referred to. But it has been held by this court that the caption is not a material part of the indictment, and there certainly was no prejudice to any substantial right of the defendant's in allowing this amendment. See *State v. Smith,* 148 Iowa 640. If no amendment had been filed, the matter covered by the offered amendment would not afford good ground for a motion in arrest of judgment.

The defendant in a criminal case is entitled to protect himself, and to this end may fence against punishment with all the instrumentalities which the law places at his command; but courts are not, in these later days, inclined to burnish his weapons or aid him in their use, nor will the courts hold him to have been fouled unless the act complained of violates the letter and spirit of the law. The courts hold to the spirit of the law in protecting the substantial rights of the defendant, but not to the letter only, to afford him an avenue of escape. We think there is nothing in this contention of the defendant's, and the court was right in permitting the amendment.

On the indictment as amended, his cause proceeded to trial, and the defendant was convicted. He appeals, and urges the insufficiency of the evidence to justify a conviction—a matter which we will deal with last in this opinion.

It is next urged that the court erred in overruling defendant's motion to strike from the record and take from the consideration of the jury all evidence of the prosecuting witness relating to an alleged miscarriage, occurring in 1913.

3. INCEST: evidence: prior incestuous acts: miscarriage.

At the conclusion of the State's testimony, the State elected to hold the defendant for an offense alleged to have been committed on December 5, 1914. Now, clearly, evidence of the physical condition of the prosecuting witness prior to the time when it was alleged and charged that the defendant had illicit intercourse with her, standing alone, would be wholly immaterial, and would tend in no way to establish the change that, on the 5th day of December, 1914, illicit relations were had between the parties. At the time this testimony was offered and objected to and introduced, there were acts of intercourse between the parties shown by the evidence prior to the alleged miscarriage, and at a time when it might have been the result of such intercourse, following the law of nature. At that time, the State had not elected, nor had the State been required to elect, on which of the several acts it would rely for conviction. The court was not in a position then to say, as a matter of law or fact, that the evidence was not material as a circumstance bearing upon the evidence of intercourse.

4. CRIMINAL LAW: trial: reception of evidence: timely motion to strike: incest.

However, after the State had elected to hold the defendant for an offense alleged to have been committed on the 5th day of December, 1914, the defendant moved to strike from the record all this testimony touching

the alleged miscarriage in 1913. The court's attention was, therefore, called to this evidence, after the election had been made, and it was asked to strike it out. The defendant is, therefore, in a position to complain of the act of the court in permitting such testimony to remain in the record, and to urge and rely upon error, if any, committed by the court in such ruling. The question then is, Did the court err in permitting this testimony to remain?

If the court was right in overruling defendant's motion to strike from the record all evidence of illicit intercourse between the parties prior to the 5th day of December, 1914, then we think the court was right in overruling the motion to strike this testimony from the record. It tends to corroborate the prosecuting witness in her statements touching intercourse at a time prior to the 5th day of December, 1914, and at a time when this condition of the prosecuting witness could well have been the result of such intercourse. It is a circumstance bearing upon the relationship of the parties, and tends to sustain the prosecuting witness in her statements touching such prior intercourse. It is the natural result, ordinarily, of such relationship. We think there was no error in the court's ruling on this point.

This brings us to a consideration of the next complaint, which involved the action of the court in striking out and withdrawing from the consideration of the jury all the evidence of illicit intercourse after December 5, 1914, and in permitting to remain in the record, over the objection of the defendant, evidence of illicit relations between them prior to that date.

The court permitted this testimony to remain, on the theory that it might throw some light upon the inclination and disposition of the defendant towards the prosecuting witness on or about the 5th day of December, 1914, when the act relied upon for conviction is alleged to have taken place, and for the purpose of throwing light, if any it does,

upon the relations between the defendant and the prosecuting witness existing on that date. Whatever the rule may be in other states, this court is committed to the doctrine that such evidence is competent, in cases of this character, for the purposes indicated by the court. See *State v. Judd,* 132 Iowa 296, a case in which the charge was incest. This court, speaking through Justice Ladd, said:

"Evidence of undue intimacy or of intercourse prior to that charged was admissible."

In *State v. Goodsell,* 138 Iowa 504, 507, third paragraph, this court said:

"In the eighth instruction, the court told the jury that other acts of undue familiarity could be considered, as tending to prove that occurring in the river, and unless he was found guilty of that, he should be acquitted. Appellant argues that this was error, in that such act could be considered only as tending to show the disposition or inclination of the parties. Conceded, but for what purpose? Plainly enough, to prove his guilt of the offense charged."

See, also, *State v. Hurd,* 101 Iowa 391. In the *Hurd* case, the evidence tended to show illicit intercourse between the father and daughter covering a period of nearly two years. As the trial progressed, different acts of intercourse were shown. The court was asked to require the State to elect, as it proceeded, on which of the several acts disclosed at each time, it would stand for conviction, and moved the court to require the State to so elect. These several motions were overruled, and at the conclusion of the State's testimony, an election was required, and the State made its election, and error was predicated upon the action of the court. This court said:

"The rule is well settled, and not questioned, that the State is not limited in its proof to the particular time of the act charged in the indictment, where time is not an

element of the crime, but it may cover the period of stat-
utory limitation; but, of course, the conviction can only be
of some specific offense. It is also the rule, as to adultery
and crimes of that character, that similar acts between the
parties, not contemplated by the charge, may be shown, to
disclose the relationship and disposition of the parties as
bearing on the probabilities of the act as charged."

See, also, *State v. Heft*, 155 Iowa 21, 36, Div. VI.

We find no reversible error here.

It is next contended that the court was
in error in permitting the State to show the
physical condition of the private parts of
the prosecuting witness at a time subse-
quent to the 5th day of December, 1914.

5. INCEST: cor-
roboration of
prosecutrix:
condition of
sexual organs.

The prosecuting witness testified to many acts of inter-
course between her and the defendant, extending over a
long period of time antedating this examination of her
parts, and had testified directly and positively that inter-
course had taken place between them on December 5, 1914.
If this were true, she being young and of tender years, it
is not unbelievable that these parts might give evidence
of the fact testified to by her. To ascertain this fact, the
examination was made, and to enlighten the jury as to
these facts, the testimony was offered. The evidence tends
to corroborate the prosecuting witness' testimony touching
the relationship that existed between her and the defendant.
The discoveries there made might well, in the minds of the
jury, have tended to sustain her claim touching the rela-
tionship. There was no evidence of any relationship be-
tween her and other parties. While this evidence may not,
in all cases, be perfectly satisfactory proof, and in some
cases may be no proof at all, yet, in the absence of any
other showing of cause for the conditions shown by this
testimony, the condition was at least a circumstance tend-
ing to corroborate her statements as to the previous inter-

course between her and the defendant, and is certainly not too remote from the last intercourse proven, in point of time, to render it admissible. The time intervening between the last intercourse proven and the condition shown would have affected only its probative force. Where there is evidence tending to show an act of intercourse, it is competent always to show pregnancy within the period of gestation. This, not for the purpose, necessarily, of showing that the party is responsible for the condition, but for the purpose of showing the other fact, that there was intercourse at a time when, in the course of nature, conception must have taken place. Conception does not always follow intercourse, but intercourse is proven by the fact of pregnancy.

We find no error here.

6. INCEST: accomplice: corroboration:· age of consent.

It is next contended that the prosecuting witness was an accomplice, or at least that the court should have submitted to the jury, under proper instruction, whether she was an accomplice or not, depending upon whether she consented to the intercourse or whether it was against her will. It is claimed that there was room for the jury to determine the proposition either way. The statute does not require corroboration in cases of this kind. However, this court has held that, where the woman consents, and is capable of consenting, then she is an accomplice, and, under Section 5489, Code, 1897, the defendant cannot be convicted on her testimony unless she be corroborated by other testimony tending to connect the defendant with the commission of the offense. In this case, however, the record discloses that the prosecuting witness was under the age of consent. In contemplation of· law, she was incapable of consenting, under the rule laid down in *State v. Sparks,* 167 Iowa 746, 750. This court said:

"In *State v. Heft,* 155 Iowa 21, 36, the case was sub-

mitted to the jury upon the theory that voluntary submission to the act by the prosecutrix would render her an accomplice, whose testimony must be corroborated.  *  *  * But that · rule, whatever its application to that case, is without force here, for the reason that the daughter of the defendant was below the age of consent, and could not, as to that act, be an accomplice."

7. WITNESSES: impeachment, etc.: hypothetical basis without foundation in record: incest.

The next assignment of error involves the admission and rejection of testimony. Special attention is called to questions propounded to one Dr. Chisholm. These questions were propounded by the defendant for the purpose of showing that premature sexual development, or when such development occurs in the very early years, is likely to affect the mental development of the child, and the witness was asked for some of the mental changes and mental characteristics of women during the period in which they pass from childhood to womanhood. These questions were objected to by the State, and objection sustained. These questions opened a large field for study and investigation. The psychological changes that transpire in the transition from childhood to womanhood might be easily explained to a jury by this doctor, but books have been written upon the question, and still the question remains open for debate. No one has passed debatable ground. Kelly, Morrow, Kaley and Moseley have written learnedly on this question, without establishing any uniform rule applicable to all women perfectly satisfactory to the learned authors themselves. It is an interesting subject for investigation, but we do not think the court erred in proceeding without the light of these discoveries. What this doctor would have said had he been permitted to answer is not disclosed by the record. It is suggested by the hypothetical question that followed that the defendant was trying to prove by this doctor that the

prosecuting witness was of a diseased mind, from which we infer that it was the thought of counsel that the early sexual development of a child would produce mental changes and mental characteristics during that period bordering on insanity. We think the ultimate object of this testimony was to affect her credibility as a witness, to show that her mind and memory had become impaired by disease, or that she might be subject to hallucinations. This testimony opened the field for wild speculation. There was not a scintilla of testimony in the record tending to show that she was physically or mentally diseased, or that her mind and memory had been affected by her early development. There was no basis for this sort of investigation in the record. Indeed, the record discloses a very clear and perfect memory. Witnesses cannot be impeached upon a hypothetical basis which has no foundation in the record. The doctor may have been able to say that cases have occurred, and it may have been assumed he would say that many cases have occurred in which early development had affected the mind of a child, but, without some basis for an accusation of this kind against this prosecuting witness, she could not be impeached upon the merest speculation as to what might result from a condition which itself was merely speculative.

We do not think the court erred in refusing to enter this field of inquiry.

8. Appeal and Error: review: presumptions: exclusion of question: necessity to show prejudice.

Other questions were propounded to this doctor, to which objections were urged by the State and sustained, but there is nothing in the record to indicate that the answers to these questions would have been favorable to the defendant if made; nothing to indicate what the doctor would have said in answer to these questions if he had been permitted to answer. Error must affirmatively appear, and must have been prejudicial to the defendant

and his rights, in order to justify a reversal. These questions were as follows: "What would be her condition mentally under these circumstances?" and "whether her mind would be centered on her sexual nature," and "whether or not the faculties of reason, judgment and moral sense are slowly developed as compared with the sexual and physical development." Questions of similar import were asked of one Dr. Emmert. We have examined these questions, and find no ground for reversal based on errors assigned.

It is next urged that the court made 9. TRIAL: misconduct of court: prompt withdrawal. remarks in the presence of the jury prejudicial to the defendant. Our attention is called to but one remark, made at a time when the defendant was introducing evidence to show the improbability of the prosecuting witness' having recovered from the miscarriage without the aid of a physician, as follows: "It is an old saying that people sometimes get well when they do not call a doctor." Defendant objected to this statement by the court, and the court, in a very full and impressive statement to the jury, withdrew the statement, stating that it was made as a matter of pleasantry, saying to the jury:

"I wish to withdraw the remark the court made with reference to the old saying advanced merely in a spirit of pleasantry, without a thought of its being taken seriously by counsel or the jury. It was not said with any intention that it should be taken seriously, and without any thought that the jury would for a moment consider it, or that anyone would, and the court withdraws the remark, and instructs the jury that it is to be absolutely disregarded, and has no place in the case. The jury will not refer to it or consider it at any time from this time on, or from the time it was actually made."

In the first place, we think there was no prejudicial error in the remark. If there was, the court so pleasantly

and forcefully withdrew it from the consideration of the jury, and so emphatically instructed the jury not to consider it, that we are inclined to think that, if there was any possible prejudice in the remark, it was surely cured by the court's conduct. The court showed a truly penitent and contrite heart for the great wrong he had inadvertently done the defendant, and should be forgiven, and we do forgive him.

This brings us to a consideration of the instructions of the court on which considerable complaint is made. The complaint is aimed at the third and tenth instructions.

10. CRIMINAL LAW: instructions: form, requisites and sufficiency: assumption of fact: incest.

The first part of the third instruction tells the jury that the State had introduced evidence concerning several acts of intercourse which it claims took place between the defendant and the prosecuting witness; that, at the conclusion of the State's evidence, on motion of the defendant, the court required the State to elect on which act of intercourse it would rely for conviction; that the State thereupon elected to stand upon an act claimed to have taken place on the 5th day of December, 1914, locating the place as testified to by the witness. The court then said to the jury:

"Having thus elected to stand upon this particular act upon this particular occasion, the State must show, by the evidence before the jury, that the act of sexual intercourse did take place between the defendant and the prosecuting witness upon this particular occasion, and under the circumstances under which the State claims it occurred."

We are not advised clearly what the complaint is against this instruction. It clearly and rightly sets forth the fact concerning which it deals, and advises the jury that it is limited in its consideration to what is claimed to have taken place on the 5th day of December, 1914. We discover nothing wrong with this instruction.

The tenth paragraph is complained of because, as counsel says, the court erred in assuming certain facts as established, and in not telling the jury that such facts could not be considered unless established. This tenth instruction was given to the jury to advise them of the purpose for which prior acts of sexual intercourse were permitted to be shown, and rightly instructed the jury on that point. The instruction, in substance, is as follows: That the evidence concerning other prior acts of sexual intercourse between the said defendant and the said Iva Pelser was introduced by the State for the purpose of throwing light, if any it does, upon the inclination and disposition of the defendant towards the said Iva on or about the 5th day of December, 1914, for the purpose of throwing light, if any it does, upon the relations between the defendant and Iva existing on that date; that any testimony of acts prior to the 5th day of December, 1914, can be considered only for that purpose; and directed the jury that they should not consider any evidence of acts occurring subsequent to the 5th day of December, 1914.

This instruction deals only with the *evidence* of facts, and not with the facts. It deals with the consideration of evidence offered by the State, and not with the facts that the evidence tended to prove, and cautioned the jury that, in the use of this evidence, they should limit it to the purposes indicated by the court.

Special complaint is made of the last sentence in this tenth paragraph, to wit:

11. CRIMINAL LAW: instructions: withdrawal favorable to defendant.

"The evidence of such acts occurring after the occasion submitted to you has been withdrawn from your consideration, and such subsequent acts will not be considered by you for any purpose whatever."

We fail to see where any prejudice could result to the defendant in this. The jury were distinctly told that the

evidence of subsequent acts of intercourse was withdrawn, and in effect were told that, if there were any such acts of intercourse proven by the evidence, they should not consider them, though proven, in determining the guilt or innocence of the defendant. We think this instruction was as favorable to the defendant as he could expect, or as can be justified under the law.

It is contended that the court erred in giving its fourteenth instruction to the jury. This instruction reads as follows:

12. CRIMINAL LAW: instructions: form, requisites and sufficiency: good character.

"The defendant has introduced evidence before you with reference to his general moral character, and his character with reference to sexual matters, and his general reputation for general moral character in the community in which he lives. This testimony was introduced by him upon the theory that a man of good moral character, or of good character in sexual matters, or bearing a general reputation for good moral character in the community in which such person lives, would not be likely to commit a crime of the character charged in this indictment. In this connection, you are instructed that, while good moral character, or good reputation for good moral character, are no defense when a crime is shown to have been committed, they are proper matters to be considered by the jury in determining whether or not a party did in fact commit the crime charged against him. And in this case, if you find from the evidence before you that the defendant, at the time it is claimed by the State that this crime was committed, was a man of good moral character, or of good character so far as relates to sexual matters, or at the time bore a good reputation for good moral character in the community in which he lived, then you should consider such good character and reputation and give it such weight as you deem it entitled to, in arriving at your conclusion as to the guilt or innocence of the defendant of the

charge contained in this indictment."

We see no basis for interfering with this instruction, in view of what has been said by this court in *State v. House,* 108 Iowa 68; *State v. Jones,* 145 Iowa 176; and *State v. Shultz,* 177 Iowa 321.

It is next contended that, even conceding
13. INCEST: evidence: prior incestuous acts: miscarriage.
that the evidence of a miscarriage was competent to go to the jury and be considered by it, it could be considered only on the same issue and for the same purpose that the evidence of previous intercourse might be considered; and it is urged that, in presenting the case to the jury, the court did not limit this evidence to the proper and legitimate purpose for which alone it could be considered.

It must be borne in mind that the evidence of acts of previous intercourse was permitted to go to the jury for the purpose of showing the relationship existing between the parties, as bearing upon the question of probabilities as to the act of intercourse on the date selected by the State. This testimony as to the miscarriage was only corroborative of the testimony touching prior intercourse; and therefore it follows, logically, that the limitation placed upon this testimony as to prior intercourse was a limitation, in and of itself, upon this testimony. But the defendant asked no instruction upon this point, and is now not in a position to complain that the court did not assume to instruct upon this side issue more fully than had already been done.

14. TRIAL: instructions: form, requisites and sufficiency: correct but not explicit: criminal law.

It must be remembered that the instructions are to be read as a whole and, when read as a whole, must fairly serve the jury as a guide to the law which governs them in the consideration of the case. Cases cannot be and are not reversed by this court because some detached sentence, considered separately and apart from the subject matter

under discussion, does not state an abstract proposition of law in the technical and nice language of the books. If the instructions, when read together and considered together, fairly and correctly give to the jury the law which must and should guide them in their deliberation, it is sufficient.

We find no error in the instructions, whether complained of or not, which would justify us in saying that any substantial right of the defendant was denied or even impaired in the giving of the instructions presented by this record.

It is next contended that there was 15. TRIAL: misconduct of counsel representing the conduct of counsel: withdrawal: effect. State, during the trial, in propounding improper questions to witnesses, and in persisting in some of the questions after ruling made by the court. An examination of this record, however, satisfies us that, in the light of the court's action, no possible prejudice could have resulted to this defendant.

Complaint is also made of the conduct of the State's attorney in argument. No good purpose would be served by setting out these complaints. Suffice it to say that the court's prompt action in sustaining objections, and in admonishing the jury not to consider these matters, saying to them, "The jury will consider only such acts as are disclosed in the evidence and shown in the evidence, and the jury will not speculate on any others that may have occurred, and counsel, of course, should withdraw any statement as to any acts, if he made it, as to any acts of intercourse other than those which the evidence showed," followed by counsel's prompt withdrawal, leaves no basis for prejudicial error.

The next complaint involves the amendment to the motion for a new trial. In this the defendant claims a right to retrial on the ground of newly discovered evidence. We will not review this evidence, but say that we find no

error in the court's action in refusing to grant a new trial on this alleged ground, and our finding has support in the case of *State v. Leuth,* 128 Iowa 189.

This brings us to a consideration of the case upon its merits.

It is claimed that the evidence did not justify the verdict. There are many things in this record that are out of the line of the common experience of men. A motive is suggested for the complaint made against this defendant. The revolting character of the crime, if committed, argues somewhat against the probability of its commission by this defendant, who, as the record shows, had always borne a fairly good reputation in the community in which he lived. It sometimes happens, however, in the experience of men, that those who have on the surface maintained themselves within the appearance of right living are in fact bad at heart, and frequently when it is said that a good man has gone wrong, it should be said that a bad man has been found out. The evidence, considered as a whole, viewed from all the angles of approach, we think, fully sustains the verdict. As we have frequently remarked, the jury had the witnesses before them, the cause was tried in the neighborhood in which this man lived; the witnesses were not strangers to that community; and yet the jury, upon the evidence submitted, having seen and heard the witnesses, pronounced the defendant guilty. The matter was brought before the district court for review. That court found that the evidence justified the verdict. No good purpose would be served by setting out any portion of this evidence. It is sufficient to say that we too, upon a review, have reached the same conclusion that the jury reached, and the verdict and the judgment upon the verdict must, therefore, stand. The cause is—*Affirmed.*

LADD, EVANS and STEVENS, JJ., concur.